817 A.2d 927

Kevin Powers CARROLL

v.

STATE of Maryland.

No. 380, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Feb. 28, 2003.

Brian J. Murphy, Baltimore, for appellant.

Rachel Marblestone Kamine, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore and Marna McLendon, State's Attorney for Howard County, Ellicott City, on the brief), for appellee.

Argued before SONNER, KENNEY and RAYMOND G. THIEME, JR. (Ret'd, specially assigned), JJ.

RAYMOND G. THIEME, JR. (Judge, Retired, Specially Assigned).

In *Wynn v. State,* 117 Md.App. 133, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998); *Lee*

*v. State,* 139 Md.App. 79, 774 A.2d 1183, *cert. granted,* 366 Md. 246, 783 A.2d 221 (2001); *Davis v. State,* 144 Md.App. 144, 797 A.2d 84, *cert. granted,* 370 Md. 268, 805 A.2d 265 (2002); and *State v. Riley,* 147 Md.App. 113, 807 A.2d 797 (2002), we considered the environs of Maryland law with regard to no-knock entries. Not indifferent to the rough-and-ready world in which Fourth Amendment principles are tested, we artlessly assumed these cases might begin, ever so slightly, to close the doors with regard to no-knock entries. Unfortunately, this case again shows that the doors of Fourth Amendment issues, like wisdom, are never shut, even temporarily.

In the Circuit Court for Howard County, Kevin Powers Carroll, appellant, was charged by indictment with possession of a regulated firearm after a conviction of a "felony crime of violence," possession of marijuana, and possession of drug paraphernalia. On November 9, 2001, a hearing was held on appellant's motion to suppress evidence.[1] Appellant's motion was denied by way of a written memorandum and order, on November 30, 2001. On March 20, 2002, appellant was convicted of the firearm count after a not guilty plea on an agreed statement of facts.[2] On April 24, 2002, appellant was sentenced to five years in prison without the possibility of parole on the firearm conviction. On that same day, appellant filed a timely notice of appeal.

Appellant now presents the following question for our review:

DID THE TRIAL COURT ERR IN UPHOLDING A "NO–KNOCK" ENTRY WHEN THE POLICE PURPOSELY DID NOT SEEK A "NO–KNOCK" WARRANT BUT, INSTEAD, LATER DECIDED ON THEIR OWN TO FORCIBLY ENTER WITHOUT KNOCKING AND ANNOUNCING?

---

1. Appellant's motion was filed on August 15, 2001, and was entitled Motion Pursuant to Maryland Rule 4–252.

2. A nolle prosequi was entered on the two other counts.

For the reasons that follow, we shall answer "yes" and reverse the judgment of the circuit court.

## Factual Background

Appellant, a 22–year old resident of Columbia, in Howard County, lived with his parents in a single-family home at 5738 Margrave Mews. During the month of March, 2001, the Howard County Police Department received information from an undisclosed source that there were five handguns and some marijuana in appellant's house. Appellant was not permitted to possess those firearms because of a prior conviction for third degree burglary. Acting on that information, the police sought, and were granted, a search and seizure warrant for the premises of 5738 Margrave Mews. The warrant specifically authorized the seizure of marijuana and firearms. The police did not seek, and were not granted, permission to dispense with the "knock and announce" requirement when executing that warrant.

On March 6, 2001, the police executed the warrant without knocking and announcing their presence. The police assembled a team of "tactical" officers who "staged" near the house in a "tactical vehicle." These officers—a total of 12—had just come from a "barricade" situation and were dressed in blue "BDU's" or "Battle Dress Uniforms." These uniforms are similar to what people wear in the armed services, only they are all blue. The uniforms said "Police" on the front and back; and the officers wore police badges. Each officer also wore a ballistic vest, a Kevlar helmet, and a black "balaclava" or fire resistant hood. This equipment almost completely obscured the faces of the officers. Three of the officers carried "ballistic shields" which were three feet tall and two feet wide. The officers were also armed with either handguns or rifles.

The police gained entry through the side door with the use of a two-man battering ram. Once the door was open, the battering ram team "peeled to the side of the door" to allow the entrance of the "point teams." Once inside, each of the three "point teams," led by the shield-bearing "point officer,"

ran to a different floor so that it would take just "12 to 15 seconds to have the whole residence cleared and everyone secured." While running through the house, the "point officers" were "yelling" as "loud as they can, 'Police search warrant, Police search warrant.'" Appellant's father was the only person in the residence. He was found sitting in a chair at a computer terminal. The police "put down [the father] on the ground and secured [him]" at gunpoint. After a thorough search, one firearm was found in the house in what was later established as appellant's room.

### Hearing on the Motion to Suppress[3]

During the suppression hearing, Sergeant Merritt Bender testified that:

[The State]: Now, drawing your attention back to March 6th, of 2001, Sergeant, can you tell us what information you were provided with, by fellow members of the Police Department, and what investigation you did, regarding the execution of the warrant at 5738 Margrave Mews.

[Sergeant Bender]: That's correct. I was contacted—we were—we had actually been called up by patrol to handle a barricade situation or a quasi-barricade situation they were having up on Montgomery Road, when I was first contacted.

I was contacted about 4:20 in the afternoon by Corporal Verderaime.

He advised me that he had a search warrant for the residence you named, 5738 Margrave Mews. He advised that the suspect in the—in the—in the case was Mr. Kevin Powers Carroll, the Defendant seated to my right, in the green shirt, *and that he had—he had past arrests*

---

**3.** Because the appellant's sole challenge is to the circuit court's decision to grant the motion to suppress, we set forth only the evidence taken at the hearing on that motion. *See Aiken v. State*, 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied*, 337 Md. 89, 651 A.2d 854 (1995). During the suppression hearing only two witnesses testified, the first was Sergeant Bender and the second was the Defendant Kevin Powers Carroll.

*for felony burglary, possession of marijuana and rob-bery.* [Emphasis added.]

He advised that the search warrant was for five hand-guns, which had been stolen in a B & E, and marijuana. He said that—he advised, me that Mr. Powers [Carroll] lived in the residence with his parents. His father is outside in the hall—

* * *

[Sergeant Bender]:—and that Mr. Carroll had associates—or associated with a defendant who I—not a defendant, but a person who I know as Gregory Daniel Price, who I was familiar with from my time in narcotics, as well as my time working on other assignments with the Department, who had prior arrests for first degree assault, several robberies, CDS offenses, and is—was currently believed at that time of carrying a handgun.

And that Mr. Carroll also associated with George John-son, who had—who had multiple prior arrests for CDS, and that these subjects may or may not be in the search warrant—I mean may or may not be in the residence at the time that the search warrant was executed—and, that he was requesting we execute the search—execute the search warrant as soon as possible.

[The State]: Now, did you, in fact, have occasion to look at the search warrant and review that, sir?

[Sergeant Bender]: Yes. Yes, I did.

[The State]: If I may, Your Honor, approach and review—State's Exhibit A, and do you recognize this sir?

[Sergeant Bender]: Yes, this is the—this is the search warrant that I was provided with and viewed prior to executing the search warrant.

[The State]: And, did you note, not only the address, but also the probable cause that was set forth by the affiant, Detective Verderaime?

[Sergeant Bender]: That's right.

[The State]: So, in addition to the information provided by Detective Verderaime, to you, over the telephone, you had occasion to read through the affidavit and search warrant itself?

[Sergeant Bender]: That's right.

[The State]: And the subject matter of the search warrant was what, sir, in terms of what was being sought in the residence?

[Sergeant Bender]: Handguns and marijuana.

[The State]: And the particular suspect that was suspected to be residing and tied to those pieces of evidence?

[Sergeant Bender]: Mr. Kevin Powers Carroll, the Defendant to my right.

[The State]: Now, when you learned the information from Detective Verderaime, regarding the subject matter of the warrant, the five guns, and the possible—possibility of recovery of marijuana, you then conducted the further investigation to determine who may have associated with Mr. Carroll?

[Sergeant Bender]: Actually, Corporal Verderaime gave me all this information while we were there, talking to him on the phone, initially.

[The State]: Once you gathered that all—that information, Sergeant, what steps did you then take to determine what method of entry would be conducted by the Howard County Police Department Tactical Section?

[Sergeant Bender]: I contacted—actually, again, we were at an operation—barricade thing—we were actually stationed at Rockburn Park off of Montgomery Road.

I verified or I asked if there was a—if it was—if there was a—if there was a no-knock exclusion in the search warrant. Corporal Verderaime said there was not. I asked if he had applied for it, and he said, no, he had not applied.

I then verified—I spoke with my Captain about it, and you know, basically Mr. Carroll's past, his associates past for crimes of violence, the fact that we were going after

handguns. I spoke with—I spoke [to] my Captain in reference [to] it—and said, if we are going into a residence after handguns, the guy has a past record for one robbery, and his associates have a past for several, it's not safe for us to—to go up and do a knock entry.

I contacted Corporal Verderaime's Lieutenant—Lieutenant Craig Marshall. I spoke with him about it, and—and, if—if, in fact—you know—they thought that there was a problem, or any problem with us going in on a no knock basis, based on the fact that we were going after guns.

I also contacted the State's Attorney here in—here, at Circuit Court. I contacted the State's Attorney and ran it by him, saying—explained everything that I have already explained to Your Honor, that was given to us on the background and the—

On cross-examination, Sergeant Bender acknowledged that, although he was told that appellant had once been charged with the crime of robbery as a juvenile, he was unaware if the alleged offense involved a weapon. Sergeant Bender also stated that he had no information regarding appellant "using guns, pointing guns, threatening people with guns, or aiming guns at anybody." Sergeant Bender testified that he had no specific information that Gregory Price would even be in the house and that neither Price nor his car were seen at appellant's house during surveillance prior to the execution of the search and seizure warrant. In addition, Sergeant Bender testified that he "did not have any information that he [Price] would point a gun at [the police]." Sergeant Bender also testified that he had no information that George Johnson, another friend of appellant, had ever carried a weapon or threatened to "shoot a policeman if he came into [appellant's] house."

The Honorable Dennis M. Sweeney, in his Memorandum and Order filed on December 3, 2001, denying appellant's motion to suppress, found that:

Sergeant Bender, at the time of the execution of the warrant, had reasonable suspicion that knocking and announcing his presence would increase the likelihood of danger to himself and the other officers . . .

and

Here, Sergeant Bender knew that Defendant, [was] previously convicted of third degree burglary, was in possession of firearms and drugs, had a previous arrest for robbery (a crime of violence), and associated with individuals with extensive criminal records, including crimes of violence. The [c]ourt is convinced that Sergeant Bender had a reasonable suspicion of danger sufficient to allow the Howard County Police officers to enter the house without a knock.

## Discussion

### I.

 Appellant argues that Judge Sweeney erred in denying his suppression motion and upholding a "no-knock" entry by the police.[4] In response, the State argues that the criminal records of Carroll and his alleged cohorts, in conjunction with the presence of firearms and marijuana, was sufficient to provide the officers serving the warrant with a reasonable suspicion that knocking and announcing would put them in harm's way.

---

4. When reviewing a motion to suppress, we examine only the record of the suppression hearing and not that of the trial. *Davis v. State,* 144 Md.App. 144, 152 n. 3, 797 A.2d 84, *cert. granted,* 370 Md. 268, 805 A.2d 265 (2002)(citing *Lee, supra,* 139 Md.App. at 84, 774 A.2d 1183; *Wynn, supra,* 117 Md.App. at 165, 699 A.2d 512). We extend great deference to the findings of fact and determinations of credibility made by the trial court. *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420 (2001). Moreover, we will accept the facts as determined by the suppression hearing judge, unless those facts are clearly erroneous. *Id.* In addition, we are limited to considering only those facts that are most favorable to the State as the prevailing party on the motion. *See Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *see also Simpler v. State,* 318 Md. 311, 312, 568 A.2d 22 (1990). But, as to the ultimate conclusion, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Davis, supra,* 144 Md.App. at 152 n. 3, 797 A.2d 84.

Before thinking about a cure, it is necessary to consider the etiology, which begins with a careful empirical observation of the disease. Although it is tedious to tell again tales already plainly told, police, at common law, were entitled to break into a house to arrest after announcing their authority and purpose for demanding admission. The leading American case of *Read v. Case*, 4 Conn. 166 (1822), stands for the proposition that a police officer may dispense with the notice requirement when compliance with the rule would expose him to danger. The Court reasoned that "[I]mminent danger to human life, resulting from the threats and intended violence of the principal towards his bail, constitutes a case of high necessity; and it would be a palpable perversion of a sound rule [requiring knock and announce] to extend the benefit of it to a man ... who wanted only for a demand, to wreak on his bail the most brutal and unhallowed vengeance." *Id.* at 168.

The modern restatement of the logic in *Read* occurred in *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), in which the United States Supreme Court held:

In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. *Cf., Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)(allowing a protective sweep of a house during an arrest where the officers have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(requiring a reasonable and articulable suspicion of danger to justify a pat-down search). This showing is not

high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416.

Following the Supreme Court's decision in *Richards*, and aware that we do not have a unified theory of constitutional interpretation, this Court considered two cases in which we were asked to order suppression of evidence seized as a result of no-knock entries: *Wynn v. State*, 117 Md.App. 133, 699 A.2d 512 (1997), *rev'd on other grounds*, 351 Md. 307, 718 A.2d 588 (1998), and *Lee v. State*, 139 Md.App. 79, 774 A.2d 1183, *cert. granted*, 366 Md. 246, 783 A.2d 221 (2001). In *Wynn* and *Lee*, the search warrant did not include a no-knock provision. However, the officers serving the warrant elected not to knock and announce their presence before entering the houses.

Like the devious labyrinth in which the voracious Minotaur is hidden, Fourth Amendment law is complex and contradictory. Even under what some may consider a superficial probing of the Fourth Amendment, we reviewed in *Wynn* the history of the no-knock requirement and its exceptions under Maryland law. We stated:

> The reasonableness of the officers' conduct hinges on the facts within their knowledge indicating exigency, that is, whether the officers held an objectively reasonable belief that an emergency situation existed. *See United States v. Stewart*, 867 F.2d 581, 584 (10th Cir.1993). The State bears the burden of establishing that exigent circumstances excused its noncompliance with the knock and announce requirement.

*Id.* at 167, 699 A.2d 512.

Wynn had a long criminal background, including drug convictions, assault, burglary, and handgun convictions. *Id.* at 168, 699 A.2d 512. In addition, Wynn was on parole and had pulled a concealed weapon on police, in the past, to avoid arrest. *Id.* at 168, 699 A.2d 512.

Another factor the Court considered in reaching its decision was the presence of another dangerous criminal in the house, namely Wynn's wife, Angela Kenyon. *Id.* at 168, 699 A.2d

512. The *Wynn* court, affirming the lower court, held that "sufficient particularized evidence existed to support the conclusion that the officers had an objectively reasonable belief that their personal safety was in danger because of appellant's and Kenyon's prior violent and criminal actions." *Id.* at 167, 699 A.2d 512.

The other end of the spectrum is *Lee.* In *Lee,* Judge Sonner, writing for this Court, pellucidly explained:

It is clear that, although Maryland law and the opinions of the Supreme Court of the United States presumptively require knocking and announcing before entry when searching with a proper warrant, the law also forgives the failure to do so when there are legally sufficient exigent circumstances. It is equally clear that there is no blanket or per se exception for drug searches. Rather, in each case, the police must articulate a reasonable suspicion, based upon, particularized facts, that exigent circumstances exist which justify not knocking and announcing.

*Lee,* 139 Md.App. at 89, 774 A.2d 1183.

In *Lee,* we reached the conclusion that the "record failed to show anything more than that Lee was a drug dealer whom the police observed on two previous occasions selling a small amount of a controlled dangerous substance ...," *id.* at 89, 774 A.2d 1183, and stated that "[t]he record is bare of any evidence of exigent circumstances that could possibly eliminate the constitutional necessity to knock and announce." *Id.* at 91, 774 A.2d 1183. The *Lee* Court held that the circuit court erred in ruling that there was justification for the police to enter without knocking and announcing. *Id.* at 91, 774 A.2d 1183.

■ There is no evidence that the actual manner in which the police conducted their search exceeded the bounds specified in their affidavit. They searched only those places specifically authorized by the warrant and seized only those items that were relevant. They neither "rummaged" through the defendant's belongings nor seized evidence which they did not have probable cause to seize. We are not dealing with the

manner in which the search itself was executed, nor are we dealing with a facially defective warrant. We are dealing with the absence of subsequent exigent circumstances to justify a no-knock entry[5]. In attempting to meet its burden, the State relied solely on the testimony of Sergeant Bender, a 15–year veteran, to establish that there were exigent circumstances that made it necessary to dispose of the knock and announce requirement. "The meaning of exigent circumstances is that the police are confronted with an emergency—*circumstances so imminent that they present an urgent and compelling need for police action.*" *Stackhouse v. State,* 298 Md. 203, 220, 468 A.2d 333, (1983) (emphasis supplied).

Sergeant Bender testified that his concern about knocking and announcing was based on the criminal backgrounds of appellant and the two known felons with whom he associated and the fact that the search was for an unspecified quantity of marijuana and five handguns. The criminal records of Carroll and his alleged cohorts did not create a reasonable suspicion that they would act in a dangerous manner toward the police, as contemplated in *Richards* and *Wynn.*[6] In addition, we have stated before "that a reasonable belief that firearms may be within the residence, standing alone, is clearly insufficient to excuse a knock and announce requirement." *Wynn, supra,* 117 Md.App. at 167, 699 A.2d 512.

What is absent is the absolute lack of material change in the facts or circumstances surrounding the execution of the warrant between the time it was issued and served. In other

---

**5.** We do not reach the issue of whether there were sufficient exigent circumstances for the issuance of a no-knock warrant.

**6.** Appellant's criminal background included: felony burglary, possession of marijuana, robbery and he was on parole.

Moreover, appellant's associates, Gregory Daniel Price and George Johnson, had long criminal histories. Price had prior arrests for "first degree assault, several robberies, CDS offenses, and is—was currently believed at that time of carrying a handgun. George Johnson had "multiple prior arrests for CDS." Sergeant Bender testified that there was a good chance that these dangerous individuals may have been in the house at the time of the execution of the warrant.

words, the officers serving the warrant had no "particularized knowledge". Sergeant Bender's testimony clearly demonstrated that the "particularized knowledge" was already known at the time they secured the warrant. No additional facts giving rise to a sudden emergency were shown other than what they previously had learned from the officers who secured the warrant, namely Detective Verderaime. *See, e.g., Lee,* 139 Md.App. at 90, 774 A.2d 1183. Moreover, the record indicates that the officers did not witness any suspicious activities or events while surveilling Carroll's residence that would lead them to believe that the climate had changed and that would give rise to exigent circumstances. Thus, the officers serving the warrant based their decision not to knock and announce on the information previously given to them by Detective Verderaime that was known at the time they secured the search warrant, rather than on exigent circumstances that may have arisen at the time they executed the warrant.[7] Under these circumstances, there was no evidence

---

7. The affidavit for the warrant read, in pertinent part:

Within the past seventy-two (72) hours your affiant, [Detective Mark] Verderaime was contacted by a known and reliable source. This source wished to provide your affiant with information regarding a person possessing marijuana and as well as illegally possessing several handguns.

The source stated to your affiant that within the aforementioned time period the source was inside the residence of 5738 Margrave Mews, Columbia, Howard County, Maryland. The source continued that Kevin Carroll lives at said residence. The source observed inside of Carroll's residence and in Carroll's possession of five handguns. The source described the handguns as one Ruger, one .45 cal, one 9mm and two .380 semi-automatics. In addition, the source observed Carroll in possession of a quantity of marijuana. The source described Carroll as a white male, 5–10″ tall, 180 pounds, brown hair, and approximately 23 years old. Moreover, the source directed your affiant to Carroll's house and pointed [it][sic] out to your affiant.

Your affiant Verderaime says that this source is reliable based on information and active cooperation by this source in other investigation[s][sic].

\* \* \*

Your affiant Verderaime caused the records of the Howard County Police Department Central Records to be checked for Kevin Carroll. These records indicate that Kevin Carroll is a white male 5–10″ tall, 170 pounds, brown hair and with a date of birth of 11–26–1978; and

of exigent circumstances that could possibly eliminate the constitutional requirement to knock and announce.

In *Davis v. State,* 144 Md.App. at 156, 797 A.2d 84, Chief Judge Murphy explained:

> If at the time he or she is applying for a search warrant, a law enforcement officer believes that the circumstances under which the warrant will be executed justify dispensing with the knock and announce requirement, *the officer should seek no-knock authorization from the warrant issuing judge.* If the judge is satisfied that the request for a no-knock entry is reasonable, the judge should include in the warrant a mandate that, in substantially the following form, provides:
>
> > Good cause being shown therefor, the executing law enforcement officers are authorized to enter the premises to be searched without giving notice of their authority and purpose.

(Emphasis supplied.) [8]

Sergeant Bender testified that prior to the execution of the warrant he spoke with his Captain about the no-knock exclusion from the warrant as well as Corporal Verderaime's superior, Lieutenant Craig Marshall, and lastly with an assistant state's attorney. Unfortunately, the one party who must be consulted, was not—a disinterested magistrate.

---

residing at 5738 Margrave Mews, Columbia, Howard County, Maryland.

Your affiant Verderaime caused the official records of the Maryland Justice Information System Data Base to be checked on any criminal convictions on Kevin Powers Carroll with a date of birth of 11–26–78. The official records indicated that in the year on 1999 Kevin Carroll was convicted of third degree felony burglary and given a sentence of five years of which five years was suspended. . . .

**8.** See "The New 'No–Knock' Provision and Its Effect on The Authority of the Police To Break and Enter", Irma Raker, The American University Law Review, (1970–71), Vol. 20, p. 467 discussing the District of Columbia statute setting forth the right of an officer to break and enter a home under certain conditions. Maryland has no such statute.

■ As Judge Moylan pointed out in *State v. Riley,* 147 Md.App. 113, 121, 807 A.2d 797, (2002):

> The fundamental policy undergirding the warrant require-ment is just as strong with respect to the no-knock incre-ment as it is with respect to the underlying entry into the home itself. The constitutional concern is that the police should eschew making unilateral decisions both 1) as to *whether* the threshold should be crossed and 2) as to *how* the threshold should be crossed and should, instead, defer to the disinterested judgment on those questions of a neutral and detached judicial figure.

Thus, we find that the suppression court erred in ruling that there was justification for the police entry without knocking and announcing and reverse its decision.[9]

The State, in the alternative, hoping to strike a balance between the constitutional imperatives of the warrant clause and the harsh consequences of invoking the "upside-down" incentives created by the Fourth Amendment exclusionary rule, argues that the evidence seized during the search would still be admissible under the inevitable discovery exception to the exclusionary rule that allows evidence that would have been discovered by independent means to be admitted.[10]

---

9. Because the evidence discovered during the search of Carroll's home is inadmissible, there is insufficient proof to sustain Carroll's convic-tion. *See Lee, supra,* 139 Md.App. at 91, 774 A.2d 1183.

10. The United States Supreme Court first addressed the inevitable discovery rule in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). *Nix* involved the disappearance and subsequent murder of a young girl. *Id.* at 434, 104 S.Ct. 2501. The police were still searching for the body when an arrest was made. Detectives transported the suspect, Mr. Williams, from Davenport, Iowa to Des Moines after he had retained counsel. Williams' attorney informed the police that they were not to question Mr. Williams without counsel present. During the trip, one of the officers improperly questioned Mr. Williams. As a result of this conversation, Mr. Williams took the officers to the body. The police called off the search for the body as soon as they established Williams' cooperation; the search ended only two and a half miles from the location of the body. *Id.* at 435–36, 104 S.Ct. 2501.

■■■■ As in *Lee,* the State insists in its brief that had the police properly knocked on Lee's door and announced their presence the cocaine would have inevitably been discovered and seized, despite the method of entry.[11]

■■■■ Applying the inevitable discovery exception to this evidence allows the State to use the exception to wrongfully circumvent the Fourth Amendment's warrant requirement. Essentially, the State is arguing:

> "We realize that we illegally executed the warrant. But we had probable cause, and had we bothered to, we could have obtained a no-knock warrant that surely would have issued. We then would have searched pursuant to it and discovered the evidence. Therefore all the evidence should be admissible under the inevitable discovery exception."

As we pointed out in *Lee,* the doctrine of inevitable discovery applied to this case would forgive the police for their unconstitutional entry. Judge Sonner, writing for the Court in *Lee,* opined:

> To apply the inevitable discovery exception to the exclusionary rule in this instance would render the knock-and-announce provision of the Fourth Amendment meaningless. The application of inevitable discovery in such cases negates the rule against per se exceptions to the knock-and-announce requirement. The United States Supreme Court has twice unanimously affirmed the requirement to knock and announce. In light of two rulings from the nation's

---

**11.** Cases involving the inevitable discovery doctrine shall be determined by a preponderance of the evidence. *See Stokes v. State,* 289 Md. 155, 165, 423 A.2d 552 (1980)(An "unsupported assertion ... is no substitute for evidentiary proof."); *see also Nix, supra,* 467 U.S. at 444 n. 5, 104 S.Ct. at 2509 n. 5, 81 L.Ed.2d 377 ("inevitable discover speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings [, a preponderance of the evidence].")). However, we note that "[i]nevitable discovery is not an exception to be invoked casually, and if it is to be prevented from swallowing the Fourth Amendment and the exclusionary rule, courts must take care to hold the government to its burden of proof." *United States v. Jones,* 72 F.3d 1324, 1334 (7th Cir.1995).

highest court, finding this requirement to exist in both our common law and the Constitution, it would be wrong and utterly inconsistent for Maryland, in effect, to expunge this requirement and establish such an exception as was created in Michigan, by attaching the doctrine of inevitable discovery to violations of the well established knock-and-announce requirement.

*Lee*, 139 Md.App. at 94, 774 A.2d 1183.[12]

Thus, the application of the inevitable discovery exception to evidence, in this case, permits the exception to swallow the

---

12. The Supreme Court of the United States has yet to take a case that directly addresses the tension between the "knock and announce" requirement, under the Fourth Amendment, *see Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), and the "inevitable discovery" rule adopted in *Nix v. Williams, supra*, 467 U.S. at 440–48, 104 S.Ct. 2501. Nevertheless, several federal and state courts have addressed this issue and the majority have found that the inevitable discovery rule should not be used in cases where officers violated the knock and announce requirement. *See United States v. Espinoza*, 105 F.Supp.2d 1015, 1019–21 (E.D.Wis.2000)("... the government's position that the inevitable discovery doctrine trumps the exclusionary rule in cases of knock and announce violations must be rejected ...."); *see also United States v. Shugart*, 889 F.Supp. 963, 976–77 (E.D.Tex.1995), *aff'd*, 117 F.3d 838 (5th Cir.1997), *cert. denied*, 522 U.S. 976, 118 S.Ct. 433, 139 L.Ed.2d 333 ("... it must be noted that application of the inevitable discovery doctrine to evidence seized after a clear violation of the [federal] 'knock and announce' statute would completely [e]viscerate [sic] the fundamental privacy and safety interests that statute seeks to secure."); *United States v. Marts*, 986 F.2d 1216, 1219 (8th Cir.1993)("Longstanding constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers 'would have found it anyway.' "); *State v. Tate*, 323 Ill.App.3d 905, 257 Ill.Dec. 152, 753 N.E.2d 347 (2001)("A contrary conclusion would render the 'knock and announce' requirement meaningless and allow the [inevitable discovery] exception to swallow the rule."); *Mazepink v. State*, 987 S.W.2d 648, 657–58, 336 Ark. 171 (Ark.1999), *cert. denied sub nom.*, 528 U.S. 927, 120 S.Ct. 321, 145 L.Ed.2d 250 (1999) (... [W]here the search warrant, although based on probable cause and otherwise legally obtained, was executed in violation of the Fourth Amendment 'knock and announce' rule, ... the exclusion of the evidence is the appropriate remedy ... otherwise, the 'knock and announce rule would be rendered meaningless ...'"); *State v. Taylor*, 135 Ohio App.3d 182, 186, 733 N.E.2d 310 (1999), *reconsideration denied*, 88 Ohio St.3d 1487, 727 N.E.2d 135 (2000) ("If this court would apply the inevitable discovery doctrine to this case, the knock and announce rule would cease to have

exclusionary rule and disembowel the Fourth Amendment. We hold that applying the inevitable discovery rule would amount to a post hoc rationalization of the initial wrong.

**JUDGMENT REVERSED; COSTS TO BE PAID BY HOWARD COUNTY.**

---

any meaningful deterrent value."); *State v. Martinez,* 579 N.W.2d 144, 148 (Minn.Ct.App.1998)(same); *Commonwealth v. Rudisill,* 424 Pa.Super. 313, 316–18, 622 A.2d 397 (1993) (same); *Commonwealth v. Gomes,* 408 Mass. 43, 44–47, 556 N.E.2d 100, 101–03 (1990) (same).

Recently, the Court of Appeals in *Williams v. State,* 372 Md. 386, 415, 813 A.2d 231 (2002), discussed the inevitable discovery doctrine, and held that it was not applicable under the circumstances of that case. The facts in *Williams* did not make it necessary for the Court of Appeals to address the conflict between the inevitable discovery rule and the knock and announce requirement, and thus we do not find the Court's discussion instructive in the case *sub judice.*