867 A.2d 1120

**Fleance Tyrone ARCHIE**

v.

**STATE of Maryland.**

**No. 2497, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Feb. 14, 2005.

230

Stephen Sacks, Baltimore, for appellant.

Rachel Marblestone Kamins (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., SALMON, THEODORE G. BLOOM, (Retired, specially assigned), JJ.

MURPHY, C.J.

This appeal from the Circuit Court for Washington County presents the question of whether officers serving a search warrant violated the "knock and announce" rule because, after announcing their purpose and authority, they entered before they were denied admittance by the lessee of the apartment described in the warrant.[1] A Washington County jury (the

1. In *Davis v. State,* 383 Md. 394, 859 A.2d 1112 (2004), the Court of Appeals held that (1) "a judicial officer in Maryland, under current

Honorable Fred C. Wright, III, presiding) convicted Fleance Tyrone Archie, appellant, of possession of marijuana and possession of cocaine.[2] Appellant now presents two questions for our review:

I. DID THE COURT ERR IN REFUSING TO SUP-PRESS THE EVIDENCE SEIZED AS A RESULT OF A VIOLATION OF THE KNOCK AND AN-NOUNCE REQUIREMENT IN THE EXECUTION OF THE SEARCH WARRANT?

II. WAS THE EVIDENCE LEGALLY INSUFFI-CIENT TO SUSTAIN THE CONVICTIONS?

For the reasons that follow, we answer "no" to each question, and therefore affirm the judgments of the circuit court.

### Factual Background

On May 8, 2002, agents of the Washington County Narcotics Task Force and the Hagerstown Police Department executed a Search and Seizure Warrant at 213 North Mulberry Street, apartment 1F, Hagerstown, Washington County, Maryland.[3] During the pre-raid briefing, Agent Frank Toston told the members of the entry team that they would be executing "a knock and announce search warrant." The officers prepared to execute the warrant by taking various positions around the apartment building in which appellant's apartment was locat-ed. They had been conducting surveillance for approximately

---

Maryland law, may not issue a 'no-knock' warrant," and (2) "the propriety of a 'no-knock' entry will be reviewed and determined on the basis of the facts known to the officers at the time of entry, rather than at the time of the application for the warrant." *Id.* at 427–28, 859 A.2d 1112. Because the case at bar does not involve a "no-knock" entry, we express no opinion on the issue of whether such an entry would have been justified on the basis of the information known to the officers when they announced their purpose and authority.

**2.** The crime of possessing a controlled dangerous substance is codified at MD.CODE ANN., CRIM. § 5–601 (2003)(formerly art. 27, § 287). Appel-lant was sentenced to two years for possession of marijuana and to a consecutive term of six years for possession of cocaine.

**3.** The warrant was issued by the Honorable John H. McDowell of the Circuit Court for Washington County.

an hour and a half when they observed appellant enter the building. Shortly thereafter, the officers executed the warrant.

The entry team consisted of approximately eight officers, all in full SWAT uniforms, red vests and helmets. A ram was used to open the front door of appellant's apartment. At the suppression hearing, Sergeant Mark Holtzman, who was "on the street within eye shot of the front of the residence" when entry was made into the apartment, testified as follows:

> [I] could hear the SWAT Team go up. It's a very small ... the way the door opens up to the front of the house. It opens up and the defendant's door is just on the right and then there's another door that goes upstairs. So it's very tight in there. So that's why I stayed out on the street and I heard one of the team members do the knock and announce. I could hear the door pounding. Police. Search warrant.... [This] is standard protocol for them. It was a knock and announce warrant. It was not a no knock warrant[.]

> ※ ※ ※

> [T]here was a very distinct break in between those patterns of events.... It was the pounding. I heard, "Police. Search warrant. Open the door. Open the door." Nothing happened. And then I heard the ram pounding on the door and it took several hits to get through with the ram.

When the officers entered, they found appellant lying on the floor with most of his body in the bathroom and his legs out in the hallway. Appellant's body was directly in front of the toilet and his arm was wet "up to his elbow." A snack bag was on the floor next to him.[4] A juvenile female was seated in the living room. Appellant was brought into the living room while the search was conducted.

---

4. Sergeant Holtzman testified at trial that the police had intelligence indicating that appellant kept crack cocaine stored in a snack bag near the bathroom toilet so it could easily be flushed.

Numerous plastic bags of marijuana were found on a chair in the kitchen. A burnt marijuana cigarette was found in an ashtray on the kitchen counter. A marijuana cigar and marijuana were found in a trash can also located in the kitchen. Bags of marijuana were also found in the stove. On the counter were a box cutter knife, a plastic bag, and a digital scale, all containing cocaine residue. Near the oven in the kitchen was a Diaper Genie, inside of which were four gallon size zip-lock baggies of marijuana. The officers also seized a potato chip container with a false bottom and a secret compartment containing cocaine residue.

On the kitchen counter was correspondence addressed to "Ayo Flea." Officer Hose testified that he personally knew appellant and knew his nickname to be "Flea" or "Flea Dog." April Anderson testified that in April or May, she came to this residence, appellant's apartment, to "get some coke." Based on the personal effects found during the search, there appeared to be no one other than the appellant residing in the apartment.

## Discussion

### I.

 Appellant argues that his motion to suppress should have been granted on the ground that the police failed to comply with the requirements of the knock and announce rule.[5] According to appellant, the police were required to wait

---

5. In reviewing the denial of a motion to suppress, appellate courts ordinarily look only to the evidence presented at the suppression hearing and do not consider the record of the trial. *See Carter v. State*, 367 Md. 447, 457, 788 A.2d 646 (2002); *Johnson v. State*, 154 Md.App. 286, 293 n. 2, 839 A.2d 769 (2003). We are further limited to considering only those facts that are most favorable to the State as the prevailing party on the motion. *Scott v. State*, 366 Md. 121, 143, 782 A.2d 862 (2001); *Johnson*, 154 Md.App. at 293 n. 2, 839 A.2d 769.

In considering the evidence presented at the suppression hearing, we extend great deference to the fact finding of the suppression hearing judge with respect to the weighing and determining of first-level facts. *Johnson*, 154 Md.App. at 293 n. 2, 839 A.2d 769. If the appellant has raised a constitutional challenge to a search or seizure, we must make our own independent constitutional appraisal by reviewing the law and

longer than they waited before making a forced entry into his residence.[6] We reject that argument. The "knock and announce" rule does not require the officers executing a search warrant to (1) knock and announce their purpose and authority, and (2) delay entry until the persons inside the premises to be searched have ample opportunity to get rid of any and all incriminating evidence. In the case at bar, (1) the premises to be searched was a one bedroom apartment, and (2) the warrant authorized the officers to search the apartment for "controlled dangerous substances [and] related paraphernalia." Under these circumstances, the timing of the officers' entry did not violate appellant's Fourth Amendment rights.

The Fourth Amendment to the Constitution safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment requires that searches be carried out in a "reasonable" manner. *United States v. Banks,* 540, U.S. 31, 35–36, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003).

In evaluating reasonableness,[7] courts consider "whether law enforcement officers announce[ ] their presence and authority prior to entering" a dwelling. *Wilson v. Arkan-*

---

applying it to the facts of the case. *Carter,* 367 Md. at 457, 788 A.2d 646; *Johnson,* 154 Md.App. at 293 n. 2, 839 A.2d 769. Only if the trial court's factual findings are clearly erroneous will we disturb its ruling. *Wengert v. State,* 364 Md. 76, 84, 771 A.2d 389 (2001).

**6.** Evidence obtained in violation of the Fourth Amendment is inadmissible in a state prosecution and must be excluded. Searches conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable; consequently, if the police act pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure was unreasonable.

**7.** Courts may not convict someone of a crime by using evidence obtained from him by unreasonable searches and seizures as defined in the Fourth Amendment. *Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Reasonableness is determined by examining the totality of the circumstances involved in the search. *Banks,* 124 S.Ct. at 525.

*sas,* 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The "knock and announce" rule, therefore, "forms a part of the reasonableness inquiry under the Fourth Amendment." *Id.* at 929, 115 S.Ct. 1914. "It is well settled in Maryland, and long has been so, that a police officer executing a search warrant 'must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter' the premises to be searched." *State v. Lee,* 374 Md. 275, 283, 821 A.2d 922 (2003) (quoting *Henson v. State,* 236 Md. 518, 521–22, 204 A.2d 516 (1964), *overruled on other grounds, Wynn v. State,* 351 Md. 307, 315 n. 4, 718 A.2d 588 (1998)). The reasons behind this rule are threefold: (1) "to prevent sudden, unannounced invasions of the privacy of citizens," (2) "to prevent the needless destruction of property," and (3) "to safeguard the officer who might otherwise be killed by a 'fearful householder' unaware of the officer's identity or purpose." *See* Irma S. Raker, *The New "No Knock" Provision and its Effect on the Authority of the Police to Break and Enter,* 20 AM. U.L.REV. 467, 469 (1970–71); *see also Lee,* 374 Md. at 284 n. 8, 821 A.2d 922.

■■■■■ Under the common law, compliance with the knock and announce rule required two separate but related actions: First, the officers serving the warrant were required to knock and announce their presence and purpose; second, forcible entry was prohibited until the request was refused. The knock and announce rule is not immune from exceptions, however. The Fourth Amendment contains a "flexible" requirement of reasonableness and does not "mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914. For example, a no-knock entry is justified when police have "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct.

1416, 137 L.Ed.2d 615 (1997).[8] The "standards for requiring or dispensing with a knock and announcement" are the same as those used to determine "when officers can legitimately enter after knocking." *Banks,* 124 S.Ct. at 524.

Nowhere in the *Wilson* opinion does the Court expressly state that an officer has an obligation to wait until admittance has been refused before force can be used to enter the premises. In *Let Sleeping Dogs Lie: Why the Supreme Court Should Leave Fourth Amendment History Unabridged,* 82 B.U.L.Rev. 895, 904–05 (2002)(footnote omitted), written by Tracey Macklin, the author points out that, at key points in the *Wilson* opinion, Justice Thomas omits the portion of the rule prohibiting forcible entry until the request is refused.[9] According to the author, "[t]his is not a trivial omission." *Id.* at 905, 115 S.Ct. 1914.

---

8. In *Richards,* armed with a search warrant and seeking narcotics, police knocked on Richard's motel room door and indicated they were maintenance men. When Richards opened the chained door and saw that it was the police, he quickly slammed the door closed. After two or three seconds, officers began to kick and ram the door, identifying themselves in the process. Upon entering the room, police discovered cocaine. *Id.* at 388–89, 117 S.Ct. 1416. The Wisconsin Supreme Court affirmed the trial court's suppression of the evidence and held that police officers are never required to knock and announce their presence when executing a search warrant in a felony drug investigation. 201 Wis.2d 845, 549 N.W.2d 218, 226–27 (1996). The United States Supreme Court affirmed but held that the Fourth Amendment does not allow such a blanket exception to the knock and announce rule. 520 U.S. at 387–88, 117 S.Ct. 1416. Under the circumstances of the case, the Court found that the decision not to knock and announce in this case was nevertheless reasonable.

9. The author provides a number of examples of this omission: *Wilson,* 514 U.S. at 929, 115 S.Ct. 1914 ("the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority"); *Wilson, supra,* at 934, 115 S.Ct. 1914 ("in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment"); *Wilson, supra,* at 936, 115 S.Ct. 1914 (the Court "simply hold[s] that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry"). Macklin, 82 B.U.L.Rev. at 905 n. 38.

The appellate courts of this State have held that, when police officers fear for their safety or believe that evidence will be destroyed if they warn of their presence, they need not knock and announce.[10] *Wynn v. State,* 117 Md.App. 133, 167, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998).[11] Likewise, this Court has ordered suppression of evidence whenever the suspicion of exigency was insufficient to excuse a failure to comply with the "knock and announce" requirement. *See Lee v. State,* 139 Md.App. 79, 774 A.2d 1183 (2001), *aff'd, State v. Lee,* 374 Md. 275, 821 A.2d 922 (2003); *Carroll v. State,* 149 Md.App. 598, 612–13, 817 A.2d 927 (2003), *rev'd, State v. Carroll,* 383 Md. 438, 859 A.2d 1138 (2004).[12]

---

**10.** The State is required, of course, to establish that the officers had "reasonable suspicion" that such exigent circumstances existed.

**11.** In *Wynn,* we sanctioned the no-knock execution of a search warrant of Wynn's home when it was shown that police knew that (1) Wynn had a long criminal background, including drug convictions, assault, burglary, and handgun convictions; (2) Wynn was on parole and had previously pulled a weapon on police; and (3) Wynn's wife may also have been present in the house and posed a danger to the police. 117 Md.App. at 168, 699 A.2d 512. "Sufficient particularized evidence existed to support the conclusion that the officers had an objectively reasonable belief that their personal safety was in danger because of appellant's and companion's prior violent and criminal actions." *Id.* at 167, 699 A.2d 512.

In *Henson,* the Court of Appeals affirmed the denial of a motion to suppress evidence seized when police, executing a search warrant based on information that appellant was dealing in narcotics, forced their way into Henson's house without first announcing their identity and requesting admittance. 236 Md. at 520–21, 204 A.2d 516. The Court held that the unwarned forced entry was permissible in light of the ease with which narcotics can be destroyed during the time it takes for the police to knock and announce. *Id.* at 523, 204 A.2d 516. To the extent *Henson* created a *per se* rule dispensing with the knock and announce rule in drug cases, "it is no longer good law." *State v. Lee,* 374 Md. 275, 289 n. 9, 821 A.2d 922 (2003). In defining the term "reasonable," the Supreme Court has rejected the imposition of "bright-line" rules preferring instead a "case by case" analysis of its application to real life situations. *Banks,* 124 S.Ct. at 525 (citations omitted).

**12.** In *Lee,* we reversed a conviction because circumstances were not sufficiently exigent to defend the no-knock search, notwithstanding a

When officers equipped with a search warrant do knock and announce, courts have found the existence of a refusal of admittance most often by implication.[13] "Absent exigency, the police must knock and receive an actual refusal or wait out the time necessary to infer one." *United States v. Banks*, 124 S.Ct. 521, 529 (2003). The *Banks* Court, however, held that when officers knock and announce their presence, and forcibly enter after a "reasonable suspicion of exigency ha[s] ripened, their entry satisfie[s] . . . the Fourth Amendment, even without refusal of admittance." *Id.* at 529.

In *United States v. Cline*, 349 F.3d 1276, 1289–90 (10th Cir.2003), the court found a search reasonable when, after knocking and announcing, police forcibly entered the residence after a five to ten second wait when "officers were aware that a prior search of Cline's house had revealed firearms" and "they suspected he used counter-surveillance equipment and

---

search warrant, when the officers' only justification for the intrusion was information that Lee had twice sold cocaine to a confidential informant and their belief that appellant would flush the drugs down the toilet. 139 Md.App. at 89–90, 774 A.2d 1183. *Carroll* involved a no-knock entry to execute a search warrant for Carroll's residence, which he shared with his parents. Carroll was known to associate with two men who had criminal backgrounds. This Court held that the information known to the officers serving the warrant did not establish a reasonable suspicion that exigent circumstances existed for the officers' decision to make a no-knock entry. 149 Md.App. at 612–13, 817 A.2d 927. The Court of Appeals granted the State's petition for writ of certiorari, and reinstated Carroll's conviction, stating: "In this case, we are satisfied that the facts known to the officers at the time of the 'no-knock' entry supported the trial court's conclusion that such an entry was reasonable." *State v. Carroll*, 383 Md. 438, 461, 859 A.2d 1138 (2004).

13. In *Banks*, officers had information that Banks was selling cocaine, and after knocking and announcing their identity and waiting fifteen to twenty seconds, forced entry. The Court held that, given the exigency of possible destruction of evidence, the intrusion was reasonable. *Id.* "[The] police could fairly suspect that cocaine would be gone if they were reticent any longer." *Id.* at 526. The entry also satisfied the federal knock and announce statute, 18 U.S.C. § 3109 (2002). *Banks*, 124 S.Ct. at 529. Although § 3109 does not govern this case because the search was carried out by state officers, the applicable standards under the statute and the Constitution are similar. *United States v. McCloud*, 127 F.3d 1284, 1286 n. 1 (10th Cir.1997).

could be aware of their approach." In *State v. Ordonez–Villanueva*, 138 Or.App. 236, 908 P.2d 333 (1995), *review denied*, 322 Or. 644, 912 P.2d 375 (1996), police officers made a forcible entry into an apartment just four seconds after they knocked and announced that they had a search warrant. The Oregon Court of Appeals held that the officers had acted reasonably because the search warrant authorized a search for controlled substances, which could easily have been destroyed if the officers were required to wait a prolonged time after their announcement. *Id.* at 336–37. *See also State v. Reid*, 151 N.C.App. 420, 566 S.E.2d 186, 190–91 (2002) (citations omitted), in which the Court of Appeals of North Carolina affirmed the denial of a motion to suppress evidence on the ground that the police officers executing a search warrant for narcotics waited only six to eight seconds before using a battering ram to knock down a door.

 It is true that the common law knock-and-announce principles form a part of the reasonableness inquiry under the Fourth Amendment, *Wilson*, *supra*, at 930, 115 S.Ct. 1914. It is also true, however, that the search must be unreasonable in its totality in order to trigger the exclusionary rule. *Banks*, *supra*, 124 S.Ct. at 524–25. "Reasonableness is a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case...." *Id.* at 525. As indicated above, courts consider such factors as the likelihood of the presence of weapons, dangerous criminals, easily disposable evidence such as drugs, and counter-surveillance equipment when they calculate the reasonableness of a search. Exigent circumstances may justify dispensing with the requirement that the officers, after giving notice, must wait until they are refused permission to enter. *Id.* at 529.

 We are persuaded that the above authorities stand for the following proposition. Once the officers executing a search warrant for a residence have announced their purpose and authority, how long they must wait before making a forcible entry depends upon (1) the size of the place to be

searched, and (2) how easy it would be for someone inside the residence to destroy the evidence described in the warrant. When the evidence described in the warrant is of a highly evanescent nature, the place to be searched is a one bedroom apartment, the officers assigned to execute the warrant know that the suspect is in the apartment, and they have announced their purpose and authority, the officers may make a forcible entry into the apartment when they do not receive a prompt response to their announcement.

In the case at bar, the evidence shows that the police (1) knocked and announced their presence, and (2) waited a brief period of time before forcing their way in. Sergeant Holtzman described the entrance in the following way: "It was the pounding. I heard, 'Police. Search warrant. Open the door. Open the door.' Nothing happened. And then I heard the ram pounding on the door and it took several hits to get through with the ram." He stated that there was a "very distinct break" between the knock and announce and the start of the forced entry. The information set forth in the affidavit for the search warrant established that in mid–2001 the Hagerstown City Police began to receive complaints about drugs being sold from 213 North Mulberry Street by a black male known as "Flea." The police received information from many individuals who reported either (1) buying marijuana and cocaine from appellant at this address, or (2) knowing someone who had done so. A source of information (SOI) advised the police that

> [appellant] also goes by the street name of "Flea" and resides at 213 North Mulberry Street, 1st floor apartment, Hagerstown, Washington County, Maryland.... The SOI advised that [appellant] is a distributor of cocaine, crack cocaine, and marijuana.
>
> \* \* \*
>
> The SOI advised that he/she has been at [appellant's] residence ... and observed marijuana being kept in the oven in gallon size plastic bags. The SOI has also observed crack cocaine at the residence which [appellant] stores

inside potato chip bags as well as in a trash can in the kitchen.

\* \* \*

The SOI advised that [appellant] has a camera mounted on the front of the target apartment building which allows him to monitor vehicular traffic on North Mulberry Street as well as the porch and sidewalk areas located in front of the target apartment building. The viewing monitor is located in the kitchen of the target residence. [The] Affiant Toston and Co–Affiant Hose did observe a camera mounted on the left side of the front window of the target apartment building.

\* \* \*

The SOI indicated that [appellant] has a partner ... who stays with [appellant] at 213 North Mulberry Street and sells cocaine and marijuana from [appellant's] residence.... The SOI advised that he/she has observed [appellant's partner] carry a .357 magnum handgun on his person while he conducts CDS transactions.

\* \* \*

A person known to associate with appellant indicated to the police that "appellant has a camera installed at the front porch of his apartment that allows him to monitor any persons who enter the apartment building. The camera is viewed by a way of a monitor that is kept on the kitchen counter of the target residence." In addition, a criminal history check revealed that (1) in 1997, appellant was arrested for distribution of cocaine and possession with intent to distribute, and (2) appellant's alleged partner had been arrested for wearing/carrying a handgun, possession of cocaine, and conspiracy to distribute cocaine.

It is well known that persons suspected of narcotics distribution are prone to carrying weapons. *Ybarra v. Illinois,* 444 U.S. 85, 106, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). It is also true that drugs are peculiarly susceptible to quick destruction. *Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 10

L.Ed.2d 726 (1963).[14] In this situation, appellant's associate, who was known to stay at the residence, had been arrested on weapons possession charges. Both he and appellant were known to deal drugs and to keep them in the kitchen near the sink and in the bathroom near the toilet. Appellant's apartment was also equipped with a surveillance camera which would only increase the likelihood that appellant would be able to dispose of the drugs while the police were waiting outside.[15]

We hold that in the case at bar, in light of the information (about appellant, the size of his apartment, his associates, his activities, and his use of surveillance equipment to monitor people approaching his residence) acquired during the investigation, the requirements of the Fourth Amendment were satisfied when the officers (1) knocked on appellant's door, providing clear notice of their purpose and authority, (2) waited a very brief period of time, and then (3) forced their way into appellant's apartment. Under these circumstances,

---

**14.** "[I]t would seem that the perfection of small firearms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [knock and announce] a dangerous anachronism. In many situations today . . ., a rule requiring officers to forfeit the valuable element of surprise seems senseless and dangerous." Kaplan, Search and Seizure, A No Man's Land in the Criminal Law, 49 Cal. L.Rev. 474, 502 (1961).

"[T]he common law should be evaluated in the light of modern technology and the nature of illegal drug traffic in which small, easily disposable quantities of drugs can yield large profits." *Johnson v. Commonwealth*, 213 Va. 102, 189 S.E.2d 678, 680 (1972) (officers' forcible no-knock entry was not unreasonable because surveillance established that persons were on the premises, and officers had reliable information that the illegal drugs being dispensed on the premises were being stored a short distance from a bathroom in which the evidence could quickly be destroyed). It is reasonable for police officers to assume that suspects selling illegal drugs in small quantities from a residence that has normal plumbing facilities will attempt to destroy those drugs if officers knock before a search warrant is executed. *United States v. Moore*, 956 F.2d 843, 850 (8th Cir.1992). Prudent dealers will often keep drugs near a commode or kitchen sink for easy disposal. *Banks, supra*, at 527.

**15.** Agent Terry Hose testified that there was a camera affixed to the outside of the apartment door focused toward the street and the front porch of the residence. He testified that officers also found an operational monitor in the apartment which was connected to the camera.

the Fourth Amendment was not violated because the officers entered the apartment even though there had been no "refusal of admittance." *See Banks, supra,* 124 S.Ct. at 529.

### Property Damage Resulting from a Forcible Entry

▪▪▪▪ Police may damage premises so far as necessary for a no knock entrance so long as they have a reasonable suspicion of exigent circumstances. *Banks, supra,* 124 S.Ct. at 525 (citing *United States v. Ramirez,* 523 U.S. 65, 70–71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998)). We recognize, however, that an individual's interest in avoiding the destruction of their property is not inconsequential. Even if a "no knock" search is entirely reasonable under the circumstances, if it is proven that (1) the officers executing the search warrant did not afford the person whose property was damaged a reasonable opportunity to respond to their announcement, and (2) that person would have submitted to the search, he or she would be entitled to "just compensation" for the damages sustained. *Serio v. Baltimore County,* 384 Md. 373, 863 A.2d 952 (2004). Such "compensation," however, would not include suppression of evidence.

### II.

▪▪▪▪ Appellant argues that the State's evidence was insufficient to support his convictions for possession of marijuana and cocaine.[16] According to appellant, the State failed to prove that he "had knowledge of and was exercising dominion and control over the [marijuana and cocaine] on the premises." There is no merit in this argument.

▪▪▪▪ In order to "possess" a controlled dangerous substance, a person must "exercise actual or constructive dominion or control over [the substance]."[17] Possession need not be immediate and direct but may be constructive. *Rich v. State,* 93 Md.App. 142, 150, 611 A.2d 1034 (1992), *rev'd on other*

---

16. MD.CODE ANN, CRIM. § 5–601 (2003).

17. MD.CODE ANN., CRIM. § 5–101(u) (2003)(formerly art. 27, § 287).

*grounds,* 331 Md. 195, 627 A.2d 537 (1993). Knowledge of the presence and illicit nature of narcotics may be proven by inferences from the circumstances as a whole. *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988). The fact that drugs were not found on the person of the defendant does not prevent the inference that the defendant had possession and control of those drugs. *Anaweck v. State,* 63 Md.App. 239, 243, 492 A.2d 658 (1985) (citations omitted), *overruled on other grounds, Wynn v. State,* 351 Md. 307, 315 n. 4, 718 A.2d 588 (1998). The following factors are relevant to the issue of whether the evidence was sufficient to show that appellant possessed the drugs in question:

> (1) proximity between the defendant and the contraband, (2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, (3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or (4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Hall v. State,* 119 Md.App. 377, 394, 705 A.2d 50 (1998)(quoting *Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971)).

Appellant argues that *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997), and *Garrison v. State,* 272 Md. 123, 321 A.2d 767 (1974), compel the conclusion that the evidence was legally insufficient to prove that he possessed the drugs. Those cases, however, are clearly distinguishable from the instant case.[18] When the police executed the search warrant of

---

**18.** In *Taylor,* police responded to a call about a possible drug violation at a motel. The occupants allowed the officers to enter the room and permitted them to search their belongings. When the police entered, Taylor was lying on the floor of the motel room, either asleep or pretending to be asleep. Another occupant of the hotel room took marijuana out of his suitcases, gave it to the police, and admitted that it belonged to him. In reversing Taylor's conviction for possession of marijuana, the Court of Appeals noted that (1) Taylor was not in exclusive possession of the premises, and (2) the drugs were hidden in a place not within his control. 346 Md. at 459, 697 A.2d 462. The

appellant's one-bedroom apartment, they found appellant lying on the floor in the bathroom. Drugs and other contraband were found in the kitchen, in close proximity to the bathroom. On the kitchen counter, the police found a letter addressed to appellant. Other personal effects of appellant's were found in the apartment. Appellant's personal effects and correspondence addressed to him also suggested that he lived at this residence.[19] In addition, there was testimony from a witness that she went to the Mulberry Street residence to purchase drugs from appellant.[20]

Finally, when the police found appellant in the bathroom, he was on the floor next to the toilet with his arm wet up to his elbow. From this and the surrounding circumstances, an inference could be made that appellant had knowledge of the existence of the drugs. Unlike *Taylor, supra,* there is no evidence that anyone else claimed ownership of the contraband. Moreover, proximity was not the only evidence supporting possession. In contrast to *Garrison, supra,* the appellant in this case was not lying in bed when the police arrived, but instead was in the bathroom attempting to dispose of contraband down the toilet.

---

*Taylor* Court stated: " 'Mere proximity to the drug, mere presence on the property where it is located, ... without more, ... is insufficient to support a finding of possession.' " *Id.* at 460, 697 A.2d 462 (quoting *Murray v. United States,* 403 F.2d 694, 696 (9th Cir.1968)).

In *Garrison,* the Court of Appeals held that the State's evidence was insufficient to establish possession of a controlled dangerous substance. 272 Md. at 142, 321 A.2d 767. The police seized heroin from a bathroom where Garrison's husband was found attempting to dispose of the drugs down the toilet. Garrison was lying in bed in another room. The *Garrison* Court held that, although she did have a possessory interest in the house, because Garrison was not the sole occupant of the home at the time the drugs were found, the evidence was not sufficient to show directly, or inferentially, that she exercised either actual or constructive dominion or control over the heroin that her husband was trying to flush down the toilet. *Id.*

**19.** It was found that utilities at the address were listed in the name of Fleance T. Archie, Jr.

**20.** April Anderson stated that she went to "[appellant's] house to meet him" and that she went there "to get some coke."

For these reasons, we hold that the evidence was sufficient for the jury to find that appellant was in possession of these narcotics at the time of his arrest. We therefore affirm the judgments of the circuit court.

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**