859 A.2d 1138

**STATE of Maryland**

v.

**Kevin Powers CARROLL.**

**No. 25, Sept. Term, 2003.**

Court of Appeals of Maryland.

Oct. 21, 2004.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Petitioner.

Brian J. Murphy, Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

In *Carroll v. State,* 149 Md.App. 598, 817 A.2d 927 (2003), the Court of Special Appeals held that the failure of police officers in that case to knock-and-announce their presence prior to executing a search and seizure warrant was unreasonable. We granted the State's petition for a writ of certiorari, *State v. Carroll,* 374 Md. 582, 824 A.2d 58 (2003), to decide the correctness of that ruling.

The respondent, Kevin Powers Carroll, was arrested and charged with possessing a regulated firearm after having been convicted of a "felony crime of violence," as proscribed by Md.Code (1957, 1996 Repl. Vol.), Article 27, § 445(d)(1), presently codified at Md.Code (2003), § 5–133(c)(1) of the Public Safety Article, and possession of marijuana and drug paraphernalia. The evidence that formed the basis for the charges was obtained as a result of a search of the respondent's Columbia, Maryland home, pursuant to a search and seizure warrant issued by a judge of the District Court of Maryland, sitting in Howard County. In support of the search and seizure warrant, the applicant, Officer Verderaime, submitted an affidavit containing the following information:

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

"Within the past seventy-two (72) hours your affiant ... was contacted by a known and reliable source. This source wished to provide your affiant with information regarding a person possessing marijuana and as well as illegally possessing several handguns.

"The source stated to your affiant that within the aforementioned time period the source was inside the residence of 5738 Margrave Mews, Columbia, Howard County, Maryland. The source continued that Kevin Carroll lives at said residence. The source observed inside of Carroll's residence and in Carroll's possession five handguns. The source described the handguns as one Ruger, one .45 cal, one 9mm and two 380 semi-automatics. In addition, the source observed Carroll in possession of a quantity of marijuana. The source described Carroll as a white male, 5–10" tall, 180 pounds, brown hair, and approximately 23 years old. Moreover, the source directed your affiant to Carroll's house and pointed Carroll out to your affiant.

"Your affiant ... says that this source is reliable based on information and active cooperation by this source in other investigation [sic]....

"The source has a basis of knowledge regarding handguns. The source explained to your affiant the difference between a revolver and a semi-automatic handgun.

\* \* \* \*

"Your affiant ... caused the records of the Howard County Police Department Central Records to be checked for Kevin Carroll. These records indicate that Kevin Carroll is a white male 5–10 tall, 170 pounds, brown hair and with a date of birth of 11–26–1978; and residing at 5738 Margrave Mews, Columbia, Howard County, Maryland.

"Your affiant ... caused the official records of the Maryland Justice Information System Data Base to be checked on any criminal convictions on Kevin Powers Carroll with a date of birth of 11–26–1978. The official records indicated that in the year on [sic] 1999 Kevin Carroll was convicted of third

degree felony burglary and given a sentence of five years of which five years was [sic] suspended."

The affiant did not request permission from the warrant issuing judge for the police to enter the premises to be searched without knocking and announcing their presence; he did not ask, in other words, that a clause be included in the warrant authorizing a "no-knock" entry.[1]

After the warrant was issued, the affiant sought the assistance of the Tactical Section of the Howard County Police Department in executing it. The Tactical Section often assisted with the execution of warrants when there were concerns for officer safety. Sergeant Merritt Bender, the head of the Tactical Section, consistent with the practice of the Section, conducted an investigation of the respondent's criminal history, to determine whether Carroll had previously been arrested or convicted of a violent crime or a crime using a weapon. As a result, he learned that the respondent had been convicted of third-degree burglary in 1999 and that he had prior arrests for possession of marijuana and robbery. Also as usual, Sergeant Bender investigated the location to be searched, including determining who occupied and frequented that location. With respect to this investigation, he learned from the affiant that the respondent was reputed to associate with an individual, Gregory Daniel Price, with whom Bender was familiar. Price, who had prior arrests for first degree assault, a number of robberies and CDS offenses, was believed to be carrying a handgun.

Notwithstanding that there had been no request for a "no-knock" warrant, and thus, the warrant did not authorize entry without knocking and announcing, Sergeant Bender concluded that knocking and announcing before entry potentially would expose the officers to the danger of significant harm. This conclusion was based on the respondent's criminal back-

---

1. The affiant testified that he made no such request because he believed that "no-knock" warrants were issued only in those cases in which there was the potential that the suspect would destroy evidence, and destruction of evidence was not a concern in this case.

ground, his known association with an individual with a history of violent crime, Sergeant Bender's experience in executing between five and six hundred search warrants and consultations with his Captain, the affiant's Captain and the Howard County State's Attorney.

The respondent moved, prior to trial, to suppress the evidence seized during the search. The Circuit Court for Howard County denied that motion. Pointing to the affidavit in support of the warrant, the court concluded that the "information at Sergeant Bender's disposal was of sufficient substance and reliability to rise to the level of reasonable suspicion based on particularized facts." It explained:

> "Here, Sergeant Bender knew that Defendant, previously convicted of third degree burglary, was in possession of firearms and drugs, had a previous arrest for robbery (a crime of violence), and associated with individuals with extensive criminal records, including crimes of violence. The Court is convinced that Sergeant Bender had a reasonable suspicion of danger sufficient to allow the Howard County Police officers to enter the house without a knock."

The Court of Special Appeals reversed. It held that the "no-knock" entry was invalid where the police "purposely did not seek a 'no-knock' warrant," *Carroll,* 149 Md.App. at 602, 817 A.2d at 929, and, at the time of the entry, the information known to the police was the same as that which they had when they applied for the warrant. *Id.* at 611–13, 817 A.2d at 935–36.

In this Court, the State argues that the Court of Special Appeals "erred in finding that the no-knock entry was unreasonable, and in creating a rule that a [']no-knock['] entry is reasonable only if authorized by the warrant itself, unless the exigency arises between the time the search warrant is issued and served." It maintains, moreover, that there is no basis for a rule requiring that magistrate approval of a "no-knock" entry must be obtained at the time the warrant is issued, unless the facts establishing the exigency warranting a "no-knock" entry arise after the officer applies for, and obtains,

the search and seizure warrant. The State argues, in any event, that the facts known to the officers at the time of their entry justified a "no-knock" entry.

The respondent does not agree. He disputes the State's contention that the Court of Special Appeals announced a new rule, that "no-knock" entries are inappropriate when police officers do not seek a "no-knock" warrant and the circumstances pertinent to the execution of the warrant do not change between the issuance of the warrant and its execution. As the respondent sees it, the intermediate appellate court simply announced a preference for "no-knock" warrants and, thus, for a neutral magistrate to conduct a pre-entry review of all facts bearing on the mode of entry, and disapproved of the way the officers, in this case, circumvented this preferred procedure. The respondent submits that the intermediate appellate court, fully cognizant of the facts known to the officers, made an independent determination that the "no-knock" entry, in this case, was not based upon sufficient particularized facts, as required by *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) and *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

## I.

When we consider the propriety of the denial of a motion to suppress under Maryland Rule 4–252, we review only the record of the suppression hearing. *Rowe v. State*, 363 Md. 424, 431, 769 A.2d 879, 883 (2001). *See also Gamble v. State*, 318 Md. 120, 125, 567 A.2d 95, 98 (1989); *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749, 755 (1987). In conducting that review, we give great deference to the hearing judge's credibility determinations and first-level fact-finding. *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999); *Dashiell v. State*, 374 Md. 85, 93, 821 A.2d 372, 377 (2003). When, there is conflicting evidence, we are to consider it in the light most favorable to the State, *Rowe*, 363 Md. at 432, 769 A.2d at 883, we accept the facts as found by the hearing judge unless those findings are clearly erroneous. *Dashiell*, 374 Md. at 93,

821 A.2d at 377; *McMillian v. State,* 325 Md. 272, 281–82, 600 A.2d 430, 435 (1992); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990). Legal conclusions, however, are reviewed *"de novo." Rowe,* 363 Md. at 432, 769 A.2d at 883; *Cartnail v. State,* 359 Md. 272, 282, 753 A.2d 519, 525; *Ferris,* 355 Md. at 368, 735 A.2d at 497. Stated differently, we must make our own independent constitutional appraisal as to the ultimate conclusion, the propriety of the ruling under review. *Dashiell,* 374 Md. at 93–94, 821 A.2d at 377; *Riddick,* 319 Md. at 183, 571 A.2d at 1240.

## II

In *Davis v. State,* 383 Md. 394, 859 A.2d 1112, 2004 WL 2360589 (2004), we considered an issue quite relevant to the resolution of the case *sub judice,* "whether, where there is no statute so providing, a judge is authorized to issue a 'no-knock' search and seizure warrant, on the basis of which the police may make a 'no knock' entry to execute that warrant." *Id.* at 397, 859 A.2d at 1113. We held that a Maryland judge had no such authority. *Id.* at 427–28, 859 A.2d at 1132.

In that case, two police officers, having conducted an investigation, applied for a search and seizure warrant for, *inter alia,* premises, in which, they had been informed by a confidential source, Davis and his co-defendant, Adams, kept a major supply of marijuana. *Id.* at 398–99 n. 5, 859 A.2d at 1114–15, n. 5. Listing their prior experience, which they said "indicates that narcotic/drug dealers/users have, carry, and use Firearms to protect their operations," the officers' affidavit informed the judge reviewing their application for warrant that they would "attempt to gain entry by the rush or No-Knock forced entry." *Id.* at 400, 859 A.2d at 1116. The judge issued the warrant, incorporating the affidavit by reference. *Id.* at 400, 859 A.2d at 1116. As they stated that they intended to do, the police gained entry to the premises without knocking and announcing and through the use of force. As a result of the search, Davis and Adams were arrested and various weapons, drug paraphernalia and marijuana were recovered. *Id.* at 400, 859 A.2d at 1116.

Davis and Adams moved to suppress the evidence seized during the search. They argued, *"inter alia,*[2] that the facts alleged in the affidavit submitted in support of the search and seizure warrant were insufficient to justify a 'no-knock entry.'" *Davis,* 383 Md. at 400–01, 859 A.2d at 1116. The Circuit Court for Baltimore City denied the motion, reasoning:

" 'Somewhat more vexing is the consideration whether the warrant itself provides say a sufficient basis for a no-knock forced entry. The cases, which have been discussed by the defense, and reviewed by the Court, largely involve situations in which law enforcement officers were confronted with situations which post entry were determined either to rise to the level of exigency permitting no-knock entry or failed to meet that standard, and thus require suppression.

" 'No cases were found in which the issue presented was, in this context, in which there was pre-raid approval for a no-knock entry on a set of facts which essentially recite the officers' general and specific experience in law enforcement, from which they extrapolate the need, as they perceive it, for a no-knock entry. It is, of course, well-settled in search and seizure law that the issuing judge is permitted to rely upon the experience of law enforcement officers and the conclusions which reasonably flow from that experience in making the probable cause determination.

" 'I see no reason to depart from that pattern when the examination is not the presence or absence of probable cause, but is instead the existence of exigencies meriting a no-knock entry. It is, in any event, a close question for the Court.

" 'However, crediting the affiants' experience which involves hundreds of narcotics arrests, extensive training, and considerable experience in narcotics law enforcement, I

---

2. The petitioners also argued that the application did not establish probable cause for the search. The petitioners did not appeal the Circuit Court's denial of their motion on that basis, however. Consequently, the issue was not considered on appeal.

cannot conclude that their conclusion with respect to the likeliness of firearms on the property is an irrational one.'" *Id.* at 401–02, 859 A.2d at 1116. Thus, it was the police officers' wealth of experience in narcotics law enforcement that tipped the scales in favor of finding a reasonable suspicion for the "no-knock" entry.

Both petitioners timely, but unsuccessfully, appealed. Different panels of the Court of Special Appeals, in separate opinions, affirmed the judgments of the Circuit Court.[3] Only one of the opinions, *Davis v. State,* 144 Md.App. 144, 797 A.2d 84 (2002) (*Davis* I), addressed the merits of the "no-knock" warrant issue. As to the merits, the court concluded that the affidavit in support of the warrant "contained sufficient facts to establish reasonable suspicion of the then existence of exigent circumstances and, thus, to permit a judge to make a pre-entry finding that a 'no-knock' entry onto the premises was justified." *Id.* at 152, 797 A.2d at 89. Like the warrant issuing court, although it articulated additional rationale, the intermediate appellate court primarily relied on the experience of the affiant officers to credit their conclusion that those involved in the drug trade often are dangerous, carry weapons, and that drugs are easily and quickly destroyed when entry onto the premises is delayed or stalled. *Id.* at 158, 797 A.2d at 93.

Although the petitioners in *Davis* questioned, on appeal, only the sufficiency of the factual allegations offered to justify

---

3. Both panels held, citing cases from other jurisdictions so holding, *see State v. Van Beek,* 591 N.W.2d 112, 118–19 (N.D.1999); *State v. Hughes,* 589 N.W.2d 912, 915–16 (N.D.1999); *State v. Eason,* 245 Wis.2d 206, 629 N.W.2d 625, 628 (2001); *United States v. Tisdale,* 195 F.3d 70, 73 (2nd Cir.1999); *United States v. Carter,* 999 F.2d 182, 184–87 (7th Cir.1993); *United States v. Moore,* 956 F.2d 843, 851 (8th Cir.1992); *United States v. Moland,* 996 F.2d 259, 261 (10th Cir.1993); *United States v. Gonzalez,* 164 F.Supp.2d 119, 125 (D.Mass.2001); *United States v. Rivera,* 2000 U.S. Dist. Lexis 7997, *2 (D. Maine 2000); *United States v. Brown,* 69 F.Supp.2d 518, 519 (S.D.N.Y.1999); *United States v. Tavarez,* 995 F.Supp. 443, 448–49 (S.D.N.Y.1998), that the evidence seized pursuant to the warrant should not be suppressed under the good faith exception to the exclusionary rule. *See Davis v. State,* 144 Md.App. 144, 150, 797 A.2d 84, 87 (2002).

issuance of a "no-knock" warrant, assuming, as it were, the authority of Maryland judges to issue such warrants, we surveyed other jurisdictions to determine how "no-knock" warrants are handled. 383 Md. at 408–10, 859 A.2d at 1120–21. That survey revealed that, although some states have enacted "no-knock" warrant statutes, expressly authorizing such warrants, there is a split of authority among states without such statutes with respect to the authority of judicial officers in those states to issue "no-knock" warrants. *Id.* at 415–18, 859 A.2d at 1125–26.

One line of cases, characterized by 2 Wayne R. LaFave, Search And Seizure: A Treatise On The Fourth Amendment § 4.8(g) (1996), as "[t]he prevailing but not unanimous view," and exemplified by *Parsley v. Superior Court,* 9 Cal.3d 934, 109 Cal.Rptr. 563, 513 P.2d 611, 615 (1973); *State v. Bamber,* 630 So.2d 1048, 1050–51 (Fla.1994); *State v. Eminowicz,* 21 Ariz.App. 417, 520 P.2d 330, 332 (1974); *State v. Acre,* 83 Or.App. 185, 730 P.2d 1260, 1262 (1987), holds that statutory authority is a prerequisite to the issuance of "no-knock" warrants. The other line, exemplified by *Commonwealth v. Scalise,* 387 Mass. 413, 439 N.E.2d 818, 822 (1982); *State v. Lien,* 265 N.W.2d 833, 838 (Minn.1978); *State v. Henderson,* 245 Wis.2d 345, 629 N.W.2d 613, 622–23 (2001); *Poole v. State,* 266 Ga.App. 113, 596 S.E.2d 420, 422 (2004); *White v. State,* 746 So.2d 953, 956 (Miss.App.1999); *see State v. Johnson,* 168 N.J. 608, 775 A.2d 1273 (2001); *United States v. Dupras,* 980 F.Supp. 344, 348–49 (D.Mont.1997), reaches the opposite result, leaving the decision whether to issue such a warrant to the discretion of the judicial officer. Some of these latter courts, we discovered, "require the police at the scene to make a 'threshold reappraisal of the threat,'" notwithstanding the fact that a "no-knock" warrant had been issued. 383 Md. at 416, 859 A.2d at 1125, quoting *Scalise,* 439 N.E.2d at 823 and citing *Lien,* 265 N.W.2d at 839.

Having conducted the survey, we observed that the Court of Special Appeals, in *Davis* I addressed, as a threshold matter, an issue not theretofore decided by a Maryland court, whether "no-knock" warrants are authorized by Maryland law and

concluded that they were. *Davis,* 383 Md. at 418, 859 A.2d at 1126. To arrive at that conclusion, we noted the court's reliance on the warrant preference, *id.* at 418, 859 A.2d at 1126, citing and quoting *Davis* I, 144 Md.App. at 155–56, 797 A.2d at 91–92, and its determination that " '[t]his preference should be equally applicable to 'no-knock' warrants.' " [3] *Id.* at 418, 859 A.2d at 1127, quoting *Davis* I, 144 Md.App. at 156, 797 A.2d at 92. We also took note of the intermediate appellate court's application of the warrant preference in the "no-knock" warrant context:

> "If at the time he or she is applying for a search warrant, a law enforcement officer believes that the circumstances under which the warrant will be executed justify dispensing with the knock and announce requirement, the officer should seek no-knock authorization from the warrant issuing judge. If the judge is satisfied that the request for a no-knock entry is reasonable, the judge should include in the warrant a mandate that, in substantially the following form, provides:
>
>> '*Good cause being shown therefor, the executing law enforcement officers are authorized to enter the premises to be searched without giving notice of their authority and purpose.*'
>
> "Moreover, when they apply for no-knock authorization in a search warrant, law enforcement officers do not have to include in the affidavit the kind of search scene case-specific, particularized circumstances of exigency that they

---

**3.** The Court of Special Appeals reasoned, more specifically:

"Dispensing with the search scene case-specific particularized circumstances of exigency for law enforcement officers seeking no-knock authorization from a judicial officer serves the public interest. It is more beneficial for law enforcement officers to seek no-knock authorization in a search warrant, rather than make their own independent on-the-scene determination of whether to enter without knocking and announcing. If law enforcement officers had to make an identical showing of exigency regardless of whether they received no-knock authorization in the search warrant, there would be no incentive to seek judicial authorization prior to entering without knocking and announcing."

*Davis* I, 144 Md.App. at 157 n. 7, 797 A.2d at 92 n. 7.

would have to establish during the suppression hearing if they did not have a no-knock provision in the warrant and made the no-knock entry determination on their own." *Id.* at 418–19, 859 A.2d at 1127, quoting *Davis* I, 144 Md.App. at 156–57, 797 A.2d at 92 (footnotes omitted).

We reviewed two subsequent opinions of the intermediate appellate court, *State v. Riley*, 147 Md.App. 113, 807 A.2d 797 (2002) and *Carroll v. State*, 149 Md.App. 598, 817 A.2d 927 (2003), the latter of which is the subject of review in the case *sub judice.* Those opinions confirmed the approach announced in *Davis* I. *Id.* at 420–22, 859 A.2d at 1127–29.

The issue in *Riley*, we characterized as "involv[ing] determining to what deference a decision by a warrant issuing judge is entitled to be given by a reviewing judge." *Id.* at 420–21, 859 A.2d at 1127–28. Analogizing to the warrant preference and concluding that, "[t]he fundamental policy undergirding the warrant requirement is just as strong with respect to the no-knock increment as it is with respect to the underlying entry into the home itself," *Riley*, 147 Md.App. at 120–121, 807 A.2d at 802, the court opined, "[j]ust as the decision *WHETHER* to cross the threshold should be submitted to a neutral and detached judicial figure, so too should the decision as to *HOW* to cross that threshold." *Id.* at 121, 807 A.2d at 802. It was from this premise, we pointed out, that the Court of Special Appeals "admonished the applicants for search and seizure warrants to advise the issuing judge of all exigencies that would justify a 'no-knock' entry and admonished reviewing courts to give 'great deference' to the 'no-knock' determinations of the warrant issuing judge." 383 Md. at 421, 859 A.2d at 1128.

In *Carroll*, we summarized as follows:

"The issue addressed in *Carroll* was whether the failure to seek a 'no-knock' warrant foreclosed the right of the police to execute the warrant using a 'no-knock' entry. Building upon *Davis* and *Riley*, the intermediate appellate court held that a 'no-knock' entry to execute a search and seizure warrant was invalid where the police 'purposely did not seek

a "no-knock" warrant,' *Carroll,* 149 Md.App. at 602, 817 A.2d at 929, and, at the time of the entry, the information known to the police was the same as that which they had when they applied for the warrant. *Id.* at 611–14, 817 A.2d at 935–36. The court explained:

> " 'What is absent is the absolute lack of material change in the facts or circumstances surrounding the execution of the warrant between the time it was issued and served. In other words, the officers serving the warrant had no "particularized knowledge." Sergeant Bender's testimony clearly demonstrated that the "particularized knowledge" was already known at the time they secured the warrant. No additional facts giving rise to a sudden emergency were shown other than what they previously had learned from the officers who secured the warrant, namely Detective Verderaime. ... Moreover, the record indicates that the officers did not witness any suspicious activities or events while surveilling Carroll's residence that would lead them to believe that the climate had changed and that would give rise to exigent circumstances. Thus, the officers serving the warrant based their decision not to knock and announce on the information previously given to them by Detective Verderaime' that was known at the time they secured the search warrant, rather than on exigent circumstances that may have arisen at the time they executed the warrant.... Under these circumstances, there was no evidence of exigent circumstances that could possibly eliminate the constitutional requirement to knock and announce.' "

*Id.* at 421–22, 859 A.2d at 1128–29, quoting 149 Md.App. at 611–13, 817 A.2d at 935–36.

Having conducted the foregoing analysis, "[w]e reject the rule implicitly, if not expressly, enunciated by the Court of Special Appeals in *Davis*; *Riley* and *Carroll,* requiring applicants for search and seizure warrants to obtain pre-entry authorization for a 'no-knock' entry, to obtain judicial approval of the method of entry in addition to the authorization of the search." 383 Md. at 422, 859 A.2d at 1129. Notwithstanding

the recognition that there is a relationship between the propriety of a "no-knock"entry and the propriety of the issuance of the search warrant itself, because "[d]ifferent criteria inform the decision of the form of entry than inform the analysis of whether, or not, there is probable cause to search in the first place," *id.* at 422, 859 A.2d at 1129, the Court held:

"that a judicial officer in Maryland, under Maryland law, may not issue a 'no-knock' warrant. Rather, the propriety of a 'no-knock' entry will be reviewed and determined on the basis of the facts known to the officers at the time of entry, rather than at the time of the application for the warrant."

*Id.* at 427, 859 A.2d at 1132.

The rationale underlying this holding was set out as follows: "The decision as to how entry is to be made balances, at the least, the privacy interest of the individual, the need to protect the safety of police officers and the need to preserve evidence. *See Richards,* 520 U.S. at 387, 117 S.Ct. at 1418, 137 L.Ed.2d at 620. The probable cause analysis, on the other hand, while ultimately concerned with the privacy issue, is more fact based, it is concerned more specifically with the probability of the item or items that are the subject of the inquiry being in the place to be searched. Thus, what the Supreme Court pointed out in *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948), where the issue was probable cause, is entirely logical, absent exigent circumstances, deference to the determination of a detached warrant-issuing judge rather than a 'zealous' officer engaged in the often-adrenaline charged task of "ferreting out crime," is appropriate, because it supports the goal of encouraging officers to seek warrants. When the issue concerns the *form* of entry, however, probable cause for the search already having been established, the appropriate inquiry, and thus the decision to be reviewed, is whether the form used was reasonable in light of the facts as known to the officer at the time of the entry. *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 1633, 10 L.Ed.2d 726, 742 (1963) ('In addition to the officers' belief that Ker was in possession of narcotics, which could be

quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police'); *Parsley*, 109 Cal.Rptr. 563, 513 P.2d at 615 ('the key to permissible unannounced entry is the knowledge of exigent circumstances possessed by police officers at the time of entry. Thus, from the viewpoint of a court reviewing justification for an unannounced entry after the fact, a warrant authorizing such action adds nothing.'); *Bamber*, 630 So.2d at 1050–51.

"Moreover, the factors and circumstances bearing on the method of effecting entry to execute a search and seizure warrant may not be, and often are not, static; the facts bearing on the propriety of a 'no-knock' entry, known to the judicial officer when the warrant was issued may well change and be different, perhaps rendering the judicial officer's finding on the question of exigency inappropriate. This is so whatever the magistrate's decision, whether the search warrant authorized a 'no-knock' entry or refused to authorize such an entry. That deficiency of the 'no-knock' warrant has been recognized and explained. In *Parsley*, explaining why the reasonableness of an entry to execute a search and seizure warrant must be judged at the time of the entry, itself, the court said:

'Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements (*People v. Dumas* (1973) Cal. 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208,) but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry. For this reason, earlier judicial authorization would be largely inappropriate in the context of unannounced entry and, thus, clearly cannot be considered a constitutional requirement.'

109 Cal.Rptr. 563, 513 P.2d at 614."

*Id.* at 425–26, 859 A.2d at 1130–31. *See Richards,* 520 U.S. at 396 n. 7, 117 S.Ct. at 1422 n. 7, 137 L.Ed.2d at 625 n. 7 (cautioning that "a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed").

We made clear, as courts authorizing "no-knock" warrants recognize, *see Scalise,* 439 N.E.2d at 823; *Lien,* 265 N.W.2d at 839, that whether the necessary exigency exists is not fixed in time by the fact that a judicial officer may have been presented with, or have found, facts bearing on the mode of entry. *Davis,* 383 Md. at 426–27, 859 A.2d at 1131–32. Like those courts, we recognized that "the possibility of changed circumstances requires that there be a re-evaluation of the propriety of a "no-knock" entry at the time of the search." *Id.* at 427, 859 A.2d at 1132.

The question presented to the Court of Special Appeals for resolution in this case was:

"DID THE TRIAL COURT ERR IN UPHOLDING A 'NO–KNOCK' ENTRY WHEN THE POLICE PURPOSELY DID NOT SEEK A 'NO–KNOCK' WARRANT BUT, INSTEAD, LATER DECIDED ON THEIR OWN TO FORCIBLY ENTER WITHOUT KNOCKING AND ANNOUNCING?"

*Carroll,* 149 Md.App. at 601, 817 A.2d at 929. By answering "yes" to that question, that court implicitly, if not expressly, held that "no-knock" warrants are authorized in Maryland and that such warrants must be sought, and presumably obtained, in advance of the entry, if the circumstances that would justify a "no-knock" entry are known when the warrant is sought. The latter point is made manifest by the intermediate appellate court's reliance on *Davis* I, 144 Md.App. at 156, 797 A.2d at 92, which announced that officers applying for a search and seizure warrant, who are aware of circumstances that would justify such an entry, should seek authorization for a "no knock" entry at that time, and *Riley,* 147 Md.App. at 120–121,

807 A.2d at 802, in which the court opined that "[t]he fundamental policy undergirding the warrant requirement is just as strong with respect to the no knock increment as it is with respect to the underlying entry into the house itself."

As indicated, we rejected this analysis in *Davis,* when we held that "no-knock" warrants are not authorized under Maryland law. 383 Md. at 427, 859 A.2d at 1132. Accordingly, to the extent that, in determining the reasonableness of the entry in this case, the decision of the Court of Special Appeals relied on the failure of the officers to seek "no-knock" entry authorization when they applied for the search and seizure warrant, it is disapproved.

## III.

■ Turning to the question of whether the "no-knock" entry in this case was reasonable, we conclude that the Court of Special Appeals erred when it determined that it was not. The critical issue, on judicial review in this case, is whether there were sufficient facts known to the officers executing the warrant, at the time of the entry, to establish a reasonable suspicion that the circumstances justified a stealthy entry. General averments that, due to the nature of the crime, as, for example, narcotics cases, there is a propensity for the use of firearms and, consequently, officers are at a heightened risk of danger, and there is an increased danger of the destruction of evidence are not sufficient. *See Richards, supra,* 520 U.S. at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624; *Davis,* 383 Md. at 430–31, 859 A.2d at 1133–34; *State v.Lee,* 374 Md. at 287–88, 821 A.2d at 929. Rather, the factual averments must be specific as to the suspect and the situation. *Richards,* 520 U.S. at 394–95, 117 S.Ct. at 1421–22, 137 L.Ed.2d at 621.

The facts of *Richards* are instructive. In that case, police officers obtained a warrant to search Richard's hotel room, after surveillance had revealed that he was involved in drug activity. *Richards,* 520 U.S. at 388, 117 S.Ct. at 1418, 137 L.Ed.2d at 621. Their request for advance authorization to enter the hotel room without knocking and announcing was

denied by the magistrate, who deleted references to a "no-knock" entry from the warrant. *Id.* at 388, 117 S.Ct. at 1419, 137 L.Ed.2d at 621. When officers arrived at Richard's hotel room to execute the warrant, the team leader knocked on the door and announced that he was a maintenance man. *Id* at 388, 117 S.Ct. at 1418–19, 137 L.Ed.2d at 621. Although he opened the door, Richards kept the latch on, and when he saw the police officers, he slammed the door shut. The officers kicked the door numerous times to gain entry, announcing simultaneously that they were the police. Once they gained entry, drugs and money were found. *Id.* at 388–89, 117 S.Ct. at 1419, 137 L.Ed.2d at 621. Richards moved to suppress the evidence, arguing that it was obtained as a result of an illegal "no-knock" search. *Id.* at 389, 117 S.Ct. at 1419, 137 L.Ed.2d at 621.

The Wisconsin Supreme Court affirmed the denial of the suppression motion. It held that, because "nothing in *Wilson's* acknowledgment that the knock-and-announce rule was an element of the Fourth Amendment 'reasonableness' requirement would prohibit application of a *per se* exception to the rule in a category of cases," *id.* at 390, 117 S.Ct. at 1419, 137 L.Ed.2d at 621, "police officers are *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation." *Id.* at 387–88, 117 S.Ct. at 1418, 137 L.Ed.2d at 620.

The United States Supreme Court disagreed, holding that:

"In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances*, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.... This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged."

*Id.* at 394–95, 117 S.Ct. at 1421–22, 137 L.Ed.2d at 624. The Court, nevertheless, affirmed the drug conviction. *Id.* at 395, 117 S.Ct. at 1422, 137 L.Ed.2d at 624. It concluded that, on

that record, there were sufficient facts that the petitioner knew that the men who stood outside of his door were police, as evinced by his prompt slamming of the door. Therefore, given the disposable nature of the drugs and Richard's apparent intention to refuse the officers' entry, the Court agreed that the officers were justified in using force to enter the room, while simultaneously announcing that they were the police. *Id.* at 395–96, 117 S.Ct. at 1422, 137 L.Ed.2d at 625.

In determining that the "no-knock" entry in this case was unreasonable, the Court of Special Appeals relied heavily on a comparison of the facts offered to show exigency in some of its prior cases with those in the case *sub judice. Carroll*, 149 Md.App. at 609–610, 817 A.2d at 933–34. One such case was *Wynn v. State*, 117 Md.App. 133, 699 A.2d 512, (1997), *rev'd on other grounds*, 351 Md. 307, 718 A.2d 588 (1998). As to it, the intermediate appellate court concluded that, in this case, the officers relied on significantly fewer facts than did the officers executing the warrant in *Wynn*. To that end, the Court explained:

"Wynn had a long criminal background including drug convictions.... In addition, Wynn was on parole, and had pulled a concealed weapon on police, in the past, to avoid arrest....

"Another factor the Court considered in reaching its decision was the presence of another dangerous criminal in the house, namely Wynn's wife, Angela Kenyon.... The *Wynn* court, affirming the lower court, held that 'sufficient particularized evidence existed to support the conclusion that the officers had an objectively reasonable belief that their personal safety was in danger because of appellant's and Kenyon's prior violent and criminal actions.' "

*Carroll*, 149 Md.App. at 609–610, 817 A.2d at 933–34. (citations omitted).

The court then juxtaposed the exigent facts in *Wynn*, with the significantly more meager facts present in *Lee v. State*, 139 Md.App. 79, 774 A.2d 1183 (2001), *aff'd*, 374 Md. 275, 821 A.2d 922 (2003). Noting that "[t]he other end of the spectrum

is *Lee,*" *Carroll,* 149 Md.App. at 610, 817 A.2d at 934, the court explained:

> "In *Lee,* we reached the conclusion that the 'record failed to show anything more than that Lee was a drug dealer whom the police observed on two previous occasions selling a small amount of a controlled dangerous substances ....' and stated that '[t]he record is bare of any evidence of exigent circumstances that could possibly eliminate the constitutional necessity to knock and announce.' ... The *Lee* Court held that the circuit court erred in ruling that there was justification for the police to enter without knocking and announcing."

*Id.* (citation omitted).

The intermediate appellate court held that, unlike the circumstances in *Richards* and *Wynn,* the facts known to the officers in this case, did not support the conclusion that an exigency existed to execute the warrant without first knocking and announcing. The court reasoned:

> "In attempting to meet its burden, the State relied solely on the testimony of Sergeant Bender, a 15–year veteran, to establish that there were exigent circumstances that made it necessary to dispose of the knock and announce requirement. 'The meaning of exigent circumstances is that the police are confronted with an emergency—*circumstances so imminent that they present an urgent and compelling need for police action.' Stackhouse v. State,* 298 Md. 203, 220, 468 A.2d 333 (1983) (emphasis supplied).
>
> "Sergeant Bender testified that his concern about knocking and announcing was based on the criminal backgrounds of appellant and two known felons with whom he associated and the fact that the search was for an unspecified amount of marijuana and five handguns. The criminal records of Carroll and his alleged cohorts did not create a reasonable suspicion that they would act in a dangerous manner toward the police as contemplated in *Richards* and *Wynn.* In addition, we have stated before 'that a reasonable belief that firearms may be within the residence, standing alone, is

clearly insufficient to excuse a knock and announce requirement.' *Wynn, supra,* 117 Md.App. at 167, 699 A.2d 512." 149 Md.App. at 611, 817 A.2d at 934–35 (footnote omitted).

We disagree with the Court of Special Appeals.

■■■ As *Richards* indicates, "the showing [of reasonable suspicion that an exigency exists to warrant a "no-knock" entry] is not high but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Richards,* at 394–95, 117 S.Ct. at 1422, 137 L.Ed.2d at 624. In other words, the requirement that particularized circumstances establishing a reasonable suspicion of exigency be shown, does not mandate that officers show, to an absolute certainty, that their safety is in jeopardy or that evidence unquestionably will be destroyed, but rather, that the police be able to point to *some* articulable reason why the preference for knocking and announcing their presence would not be appropriate in that case. To be sure, in *Wynn,* there were a plethora of facts that indicated that the defendants were dangerous to support the conclusion that a "no-knock" entry was required. That case, however, does not set a minimum requirement that must be met in order for a "no-knock" entry in a subsequent case to be found to be reasonable. To the contrary, as *Richards* dictates, the showing must be case by case and the reasonable suspicion standard is not high. What is required is that a reviewing court be satisfied that the officers have a reasonable suspicion, based on particular circumstances, that an exigency sufficient to warrant a "no-knock" entry to execute the search warrant exists in the case under review. *See Richards, supra,* 520 U.S. at 394, 117 S.Ct. at 1421–22, 137 L.Ed.2d at 624.

■■■ In this case, the affiant averred that, in 1999, the respondent had been convicted of third degree burglary, a crime of violence, *see* Md.Code (1957, 1996 Repl. Vol.), Article 27, § 44(e), present Md.Code (2003) § 5–101(c)(4) of the Public Safety Article, and that an informant had described, in detail, five handguns, which the informant reported seeing in the respondent's premises, the premises to be searched. Subse-

quently, Sergeant Bender, who assisted in executing the warrant, learned that, in addition to his burglary conviction, the respondent also had marijuana and robbery arrests and was known to associate with an individual named Gregory Daniel Price. That individual, Sergeant Bender was aware, had previous arrests for first degree assault, multiple robberies, CDS offenses and was known to carry a handgun.

Although the facts in the case *sub judice,* may not be as substantial or as compelling as those in *Wynn,* it is worth repeating that *Wynn* did not establish a threshold by which all other "no-knock" situations will be evaluated for reasonableness. In this case, we are satisfied that the facts known to the officers at the time of the "no-knock" entry supported the trial court's conclusion that such an entry was reasonable.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.